UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

<u>Scott's of Keene, Inc.</u>,
    Plaintiff

    v.                                    Civil No. 09-cv-122-SM
                                          Opinion No. 2009 DNH 100

<u>Piaggio USA, Inc.</u>,
    Defendant

**<u>O R D E R</u>**

Plaintiff, Scott's of Keene, Inc. ("Scott's"), filed a one-count state court writ against defendant, Piaggio USA, Inc. ("Piaggio"), alleging that Piaggio violated New Hampshire's statute regulating business practices between motor vehicle manufacturers, distributors, and dealers. Piaggio timely removed the action, invoking this court's diversity jurisdiction. Scott's now moves the court to remand the proceeding to state court. For the reasons set forth below, Scott's motion to remand is denied.

**Background**

Scott's is a motor vehicle dealer doing business in Swanzey, New Hampshire, as "Eddie's Vintage Motorcycles." Piaggio is a manufacturer and distributor of motorcycles, which are sold under the brand names Piaggio, Aprilia, Moto Guzzi, and Vespa. The parties have a contractual relationship under which Piaggio

supplies, and Scott's carries and sells, defendant's Piaggio, Aprilia, and Moto Guzzi lines of motorcycles.

In its complaint, Scott's says Piaggio put Scott's at a competitive disadvantage and, in so doing, violated the provisions of N.H. Rev. Stat. Ann. ("RSA") ch. 357-C. More specifically, Scott's claim arises out of Piaggio's decision to lower the wholesale price of non-current (i.e., past model-year) motorcycles still in its own inventory. So, by way of example, Piaggio says that it may have sold a certain 2007 model-year motorcycle to its dealers in 2007 for $5,500. But, after the introduction of the 2008 model year vehicles, it may have sold 2007 model year motorcycles remaining in its inventory to its dealers for $4,750 each.

Scott's purchased a number of motorcycles from Piaggio when they were current – that is to say, at their original wholesale price. In the following model year, however, Piaggio lowered the wholesale price of non-current motorcycles still in its own inventory, offering them for sale to all its dealers, including Scott's. According to Piaggio, some of its dealers purchased those non-current motorcycles at the discounted price, while others, including Scott's, did not.

When Piaggio reduced its wholesale prices, Scott's says it still had 38 motorcycles in its inventory, for which it paid the original wholesale price.  And, because it's competitors were able to purchase the very same motorcycles from Piaggio at a lower price, Scott's says it could not compete (at least in terms of selling price) with those other dealerships.  Scott's claims to have sustained more than $65,000 in damages, measured by the difference between the amount it paid for the motorcycles in its inventory and the lower price at which Piaggio subsequently sold the same models to other dealers.

The state statute under which Scott's brings this action provides, in pertinent part, that it is unlawful for a motor vehicle manufacturer or distributor (like Piaggio) to either:

> Offer to sell or to sell any new motor vehicle at a lower actual price than the actual price offered to any other motor vehicle dealer for the same model vehicle similarly equipped or utilize any device including, but not limited to, sales promotion plans or programs which result in a lesser actual price. . . . The provisions of this subparagraph shall not apply so long as a manufacturer, distributor, or any agent thereof, offers to sell or sells new motor vehicles to all motor vehicle dealers at an equal price; [or]
>
> Offer, sell, or lease any new motor vehicle to any person, except a distributor, at a lower actual price than the actual price offered and charged a motor

vehicle dealer for the same model vehicle similarly
            equipped or utilize any device which results in such
            lesser actual price.

RSA 357-C:3 III(e)-(f).

     In its answer to Scott's complaint, Piaggio asserts that, to the extent Scott's seeks to apply New Hampshire's law to the sales Piaggio made to dealers in other states, that law violates the dormant Commerce Clause of the United States Constitution. See Defendant's Answer (document no. 7) at para. 25.  See generally Dep't of Revenue of Kentucky v. Davis, 128 S. Ct. 1801, 1808 (2008) (discussing the concept and contours of the dormant Commerce Clause).  In response, Scott's asserts that because Piaggio has challenged the constitutionality of RSA ch. 357-C, and because the New Hampshire Supreme Court has yet to interpret the scope of that statute, this court should abstain from resolving that issue.  Scott's invokes the Pullman abstention doctrine, see Railroad Comm'n of Tex. v. Pullman Co., 312 U.S. 496 (1941), and moves the court to remand this case, so the state courts may have the first opportunity to interpret the scope of the governing state statute and, in the process, potentially avoid any federal issues, by construing its provisions consistently with the national constitution's requirements.

4

**Discussion**

A federal court may abstain when federal constitutional issues are raised in connection with a state statute whose interpretation and/or scope is unsettled.  See generally Pullman, supra.  See also Harris County Comm'rs Court v. Moore, 420 U.S. 77, 83 (1975) ("[W]hen a federal constitutional claim is premised on an unsettled question of state law, the federal court should stay its hand in order to provide the state courts an opportunity to settle the underlying state-law question and thus avoid the possibility of unnecessarily deciding a constitutional question.").  Abstention is, however, a limited exception to the general rule that federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976).  Consequently, as one legal commentator has observed, Pullman abstention is appropriate:

> only when three concurrent criteria are satisfied: (1) the complaint involves a sensitive area of social policy that is best left to the states to address; (2) a federal constitutional issue could be mooted or narrowed by a definitive state court ruling on state law issues; and (3) proper resolution of the potentially determinative state law issue is uncertain.

1 William W Schwarzer, A. Wallace Tashima, & James M. Wagstaffe, Federal Civil Procedure Before Trial, § 2:1314 (2009) (emphasis in original).

Here, even assuming that Scott's claim under RSA ch. 357-C involves a "sensitive area of social policy," it is neither necessary nor appropriate for this court to abstain under the Pullman doctrine. Rather, should the need arise to interpret unsettled aspects of RSA ch. 357-C's scope, certification procedures adopted by the New Hampshire Supreme Court may be invoked. See generally N.H. Supr. Ct. R. 34. See also Therrien v. Sullivan, 2005 DNH 40 (D.N.H. March 14, 2005) (discussing the certification process); The Hill of Portsmouth Cond. Ass'n v. Parade Office, LLC, 2004 DNH 185 (D.N.H. Dec. 23, 2004) (same). As the Supreme Court has observed:

> Certification today covers territory once dominated by a deferral device called "Pullman abstention." . . . Designed to avoid federal-court error in deciding state-law questions antecedent to federal constitutional issues, the Pullman mechanism remitted parties to the state courts for adjudication of the unsettled state-law issues. If settlement of the state-law question did not prove dispositive of the case, the parties could return to the federal court for decision of the federal issues. Attractive in theory because it placed state-law questions in courts equipped to rule authoritatively on them, Pullman abstention proved protracted and expensive in practice, for it entailed a full round of litigation in the state court system before any resumption of proceedings in federal court.
>
> Certification procedure, in contrast, allows a federal court faced with a novel state-law question to put the

> question directly to the State's highest court, reducing the delay, cutting the cost, and increasing the assurance of gaining an authoritative response.

<u>Arizonans for Official English v. Arizona</u>, 520 U.S. 43, 75-76 (1997) (citations omitted).

## Conclusion

For the foregoing reasons, there is no need for this court to abstain under the <u>Pullman</u> doctrine, nor is there any reason to remand this case to state court.  Plaintiff's motion to remand (document no. 10) is, therefore, denied.

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

July 6, 2009

cc:  Gregory A. Holmes, Esq.
     W. John McNally, III, Esq.
     Duccio Mortillaro, Esq.
     Ernest E. Price, Esq.
     Arnold E. Sklar, Esq.